OPINION
{¶ 1} Appellant, Trotters, Inc., dba Trotters Café and Sports Bar, appeals from a judgment of the Franklin County Court of Common Pleas that affirmed appellee Ohio State Liquor Control Commission's ("commission") revocation of appellant's liquor permit. Because the common pleas court did not abuse its discretion by affirming the order of the commission, we affirm the judgment of the common pleas court.
 {¶ 2} At approximately 12:00 a.m. on March 22, 1998, Dena Pappas, who is now known as Dena Garrett,[1] left Trotters Café after working there earlier in the evening as a waitress. About ten minutes later, the vehicle that Pappas was driving collided with an oncoming car. Two people in the oncoming automobile died as a result of injuries sustained in the collision. Pappas herself was injured in the collision.
 {¶ 3} By indictment, Pappas was later charged with two counts of aggravated vehicular homicide, felonies of the third degree. After the state entered with leave of court a nolle prosequi as to alcohol specifications for each count in the indictment, Pappas withdrew her earlier not guilty plea, and Pappas pled no contest to the charges contained in the indictment. Finding it was factually true that Pappas committed the alleged crimes, the Perry County Court of Common Pleas found Pappas guilty of the charges in the indictment.
 {¶ 4} In May 1998, after conducting an investigation, an investigator of the Enforcement Division of the Ohio Department of Liquor Control cited appellant for two violations: (1) allowing improper conduct by permitting an agent or employee to become intoxicated, and (2) allowing improper conduct by permitting drunkenness on permit premises.
 {¶ 5} The Ohio Department of Public Safety ("department") later served notice on appellant informing it that an administrative hearing would be held to determine whether its liquor permit should be suspended, revoked, or whether a forfeiture should be ordered for two alleged violations of Ohio Adm. Code 4301:1-1-52. The department's notice charged appellant with the following violations:
Violation #1 — On March 21, 1998, your agents and/or employees, DENA PAPPAS and/or GREG FOX and/or your unidentified agent and/or employee, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct in that your agents and/or employees, DENA PAPPAS and/or GREG FOX and/or your unidentified agent and/or employee, did allow agent or employee to be intoxicated — in violation of 4301:1-1-52 a regulation of the Ohio Administrative Code.
Violation #2 — On March 21, 1998, your agents and/or employees, DENA PAPPAS and/or GREG FOX and/or your unidentified agent and/or employee, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct in that your agents and/or employees, DENA PAPPAS and/or GREG FOX and/or your unidentified agent and/or employee, did allow drunkenness on permit premises — in violation of 4301:1-1-52 a regulation of the Ohio Administrative Code.
 {¶ 6} At the administrative hearing, the commission heard testimony from 12 witnesses and it admitted into evidence several exhibits. Among its proffered exhibits, the department submitted Dena Pappas' medical records from her hospitalization following the collision; however, following the hearing, the department later withdrew this submission. In its deliberations, the commission did not consider these withdrawn medical records.
 {¶ 7} Finding appellant committed the first violation as alleged in the notice of hearing but not the second violation, the commission revoked appellant's liquor permit, effective October 31, 2002, at noon. Appellant appealed from the commission's order to the Franklin County Court of Common Pleas. Upon appellant's motion, the common pleas court stayed with some conditions the execution of the commission's order during the pendency of the appeal. The common pleas court later affirmed the commission's order.
 {¶ 8} From the common pleas court's judgment affirming the commission's revocation of appellant's liquor permit, appellant now appeals.
 {¶ 9} Appellant assigns a single error for our consideration:
THE COURT OF COMMON PLEAS ERRED WHEN IT FOUND THAT THE ORDER OF THE LIQUOR CONTROL COMMISSION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH LAW.
 {¶ 10} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111; Andrews v. Bd. of Liquor Control
(1955), 164 Ohio St. 275, 280. See, also, Our Place, Inc. v.Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571
(defining reliable, probative, and substantial evidence).
 {¶ 11} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' "Lies v. Ohio Veterinary Med. Bd. (1981), 2 Ohio App.3d 204,207, quoting Andrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, at 111.
 {¶ 12} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Ponsv. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio explained:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id. at 621. Cf. Smith v. State Liquor Control Comm. (Dec. 10, 1998), Athens App. No. 98CA03, at fn. 1 (stating that in Brownv. Ohio Bur. of Emp. Servs. [1994], 70 Ohio St.3d 1, "the Ohio Supreme Court inexplicably deviated from its prior course by phrasing the standard of review facing the court of appeals as being whether the common pleas court's decision was supported by reliable, probative and substantial evidence"). (Emphasis sic.)
 {¶ 13} An appellate court does, however, have plenary review of questions of law. Chirila v. Ohio State Chiropractic Bd.
(2001), 145 Ohio App.3d 589, 592, citing Steinfels v. Ohio Dept.of Commerce, Div. of Securities (1998), 129 Ohio App.3d 800,803, appeal not allowed (1999), 84 Ohio St.3d 1488.
 {¶ 14} Here, the commission found that appellant violated former Ohio Adm. Code 4301:1-1-52,[2] which has also been referred to as "Regulation 52." See, e.g., Kings Pub, Inc. v.Ohio Liquor Control Comm. (Sept. 30, 1998), Franklin App. No. 98AP-225. Former Ohio Adm. Code 4301:1-1-52, which was in effect at the time of the alleged violation, provided:
No permit holder, his agent, or employee shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character; any improper disturbances, lewd, immoral activities or brawls; or an indecent, profane or obscene language, songs, entertainment, literature, pictures, or advertising materials; nor shall any entertainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.
Entertainment consisting of dancing, either solo or otherwise, which may or can, either directly or by implication, suggest an immoral act is prohibited. Nor shall any permit holder, his agent, or employee possess or cause to have printed or distributed any lewd, immoral, indecent, or obscene literature, pictures or advertising material.
 {¶ 15} After considering the evidence before it, the commission found that an agent of appellant knowingly and willfully allowed "improper conduct" upon appellant's permit premises in violation of former Ohio Adm. Code 4301:1-1-52 because appellant's agent allowed Dena Pappas to become intoxicated.
 {¶ 16} By its assignment of error, appellant asserts that the commission's order is not supported by reliable, probative, or substantial evidence and, therefore, the common pleas court erred by affirming the commission's order. Appellant does not assert a constitutional challenge regarding former Ohio Adm. Code4301:1-1-52's proscription against "improper conduct." See, generally, WFO Corp. v. Ohio Liquor Control Comm. (Oct. 31, 1996), Franklin App. No. 96APE05-558, dismissed, appeal not allowed (1997), 78 Ohio St.3d 1425 ("hold[ing] that Regulation 52 is not unconstitutionally vague and/or overbroad" and "hold[ing] that Regulation 52 does not unconstitutionally abridge speech in violation of the First Amendment"); Kings Pub, Inc. v. OhioLiquor Control Comm. (Aug. 10, 2000), Franklin App. No. 99AP-1088. Cf. 161 Dublin, Inc. v. Ohio State Liquor ControlComm. (Dec. 27, 2001), Franklin App. No. 01AP-134, appeal not allowed, 95 Ohio St.3d 1438, 2002-Ohio-2084 (holding that [B][7] of former Ohio Adm. Code 4301:1-1-52, which became effective on December 10, 1998, that proscribes a permit holder, his agent, or employee from knowingly or willfully allowing in and upon a permittee's licensed premises any person to "[c]ommit improper conduct of any kind, type, or character that would offend the public's sense of decency, sobriety or good order" is unconstitutionally overbroad and vague).
 {¶ 17} At the hearing, an interview of Sue Pingle by an agent of the department was admitted into evidence. In this interview, Pingle stated that she and other members of her family were at Trotters Café on the evening of March 21, 1998, and Pappas was their server. When queried whether she noticed anything unusual about Pappas that night, Pingle stated: "She was acting weird. She took our order and she was having problems taking our order. When she was cleaning our table she dropped a plate of chicken bones and was crawling around picking them up. I do remember her telling us that she hadn't slept for 24 or 23 hours. She got in an argument with some guy." When further queried whether Pappas did anything else unusual that evening, Pingle answered: "I just remember her once walking, and she kinda stumbled when she was walking." When queried whether it appeared that Pappas was drinking, Pingle answered: "I assume that, but I didn't see her drinking. I didn't see her drinking, or didn't smell any alcohol on her. I was not that close to her. I've never seen any bartender drinking in there." (State Exhibit F.)
 {¶ 18} At the hearing, the commission also admitted into evidence prior deposition testimony of Dena Pappas from a civil matter related to the collision. In her deposition, Pappas testified that on the evening of March 21, 1998, while she was working as a waitress at Trotters Café, Donna Valentine, who at that time was an assistant manager at Trotters Café and who was bartending that evening, made two 8-ounce mixed drinks of rum and 7-Up for Pappas. Pappas further testified that she drank these mixed drinks while she worked that evening. (Pappas Depo., 94-99; 136.) Prior to her shift at Trotters Café, Pappas apparently did not eat dinner. Pappas testified in her deposition that, on March 21, 1998, she last ate at about 2:00 p.m. and she "believed" she ate a sandwich while she was working at Trotters Café during her shift. (Pappas Depo., 102.) At the time of the events of March 21, 1998, Pappas was 5' 4½" tall and weighed approximately 108 pounds. (Pappas Depo., 7-8.)
 {¶ 19} Pappas' deposition testimony that Donna Valentine gave her two mixed drinks of rum and 7-Up was consistent with information that Pappas provided to an investigator from the department. (State's Exhibit D.) Pappas denied, however, that she was impaired by alcohol at the time that she left work; however, Pappas admitted that when she left Trotters, she was "extremely tired." (Pappas Depo., 101-102.)
 {¶ 20} Before the commission, Pappas was also called to testify. (Tr. 54-118.) On direct examination, Pappas testified that, while working at Trotters Café on the evening of March 21, 1998, she drank two 10-ounce or 12-ounce mixed drinks of rum and 7-Up. (Tr. 56-57.) However, on cross-examination, Pappas later testified that she was unsure of the size of the drinks. (Tr. 81.) Pappas testified, "I'm not sure exactly what size it was. It would be like if you went into a restaurant and you ordered like a cola, like a diner-size cup." (Tr. 81.)
 {¶ 21} Pappas testified that Donna Valentine, who managed the bar at the time, voluntarily made the mixed drinks for her. (Tr. 57; 101, 102-103, 104-105.) According to Pappas, these mixed drinks were "pretty tall" and "relatively strong." (Tr. 59.) However, Pappas noted that because she did not observe Valentine making the drinks, she did not know the proportion of rum and 7-Up that was in each drink. (Tr. 59.) Pappas also testified that she drank the mixed drinks over a period of a "couple hours" and she refilled the drinks with ice. (Tr. 77.)
 {¶ 22} Before the commission, Pappas testified that on the evening before the collision, she was not drunk or intoxicated, (Tr. 62, 77) and Pappas denied admitting to anyone at any time that she had been drunk or intoxicated. (Tr. 62.) Pappas also denied drinking at another job earlier in the day, and she also denied drinking prior to beginning her shift at Trotters Café. (Tr. 65-66.) Pappas, who at the administrative hearing claimed to be about, 5' 5" tall and 115 pounds, which, according to Pappas, was the same height and weight as at the time of the time of the accident, testified that she did not eat dinner before going to work at Trotters. (Tr. 107-108.) Although she was unsure of the exact time, Pappas testified that before the accident, she last ate a sandwich at her other job. (Tr. 107-108.) Contradicting her earlier deposition testimony, Pappas denied eating anything while she worked at Trotters Café that evening. (Tr. 107, 113.)
 {¶ 23} At the administrative hearing, Amy Newlon testified that on March 21, 1998, after attending church, she had dinner with family and friends at Trotters Café. (Tr. 28.) Pappas served Newlon and her party that evening. (Tr. 28.) According to Newlon, when Pappas bent down to take the party's order, "[Newlon] could smell alcohol" (Tr. 29), and on cross-examination, Newlon testified that "[she] did smell the alcohol on [Pappas'] breath." (Tr. 40.) Newlon also testified that Pappas acted "[a] little flirty, bubbly." (Tr. 29.) Newlon further testified that, at one point, Pappas had "a situation where she fell backwards." (Tr. 29.) On cross-examination, Newlon expanded her previous testimony about Pappas' stumbling episode. (Tr. 36.) According to Newlon, while a child was behind Pappas, Pappas stumbled when she backed up without looking. (Tr. 36-37.) According to Newlon, "[Pappas] didn't fall to the ground * * * [s]he just lost her balance" in an attempt to avoid hurting the child. (Tr. 37.) When questioned whether Pappas appeared to be doing a good job, Newlon answered affirmatively. (Tr. 37.) Newlon also testified that she did not recollect observing whether Pappas drank anything on the evening of March 21, 1998. (Tr. 38-39.)
 {¶ 24} When questioned whether he noticed anything unusual about Pappas on the evening of March 21, 1998, David Newlon, Amy Newlon's husband, testified that "[o]ther than she fell over somebody's little kid that we were with. Tripped and fell." (Tr. 182.) David Newlon further testified that Pappas acted "[a] little loud," (Tr. 182) but, according to David Newlon, this was the way that Pappas typically acted. (Tr. 183.) David Newlon also testified that he could smell "a little bit of alcohol" on Pappas' breath. (Tr. 183.)
 {¶ 25} At the administrative hearing, Anne Craig, a paramedic and a detective sergeant for the city of New Lexington, Ohio, testified that in the early morning hours of March 22, 1998, she was working as a paramedic and she attended to Pappas following the automobile collision. (Tr. 187.) On direct examination, Craig testified that, after the collision, Pappas had a strong odor of alcohol on her breath. (Tr. 190.) On cross-examination, Craig confirmed that in a report following her treatment of Pappas, Craig wrote that Pappas had a definite odor of alcohol about her person. (Tr. 191.)
 {¶ 26} Teresa Phillips, who was a volunteer emergency medical technician (EMT) with the New Lexington Fire Department at the time of the collision, testified that she too responded to the accident scene. (Tr. 211.) Phillips testified that when she attended to Pappas, she detected an odor of alcohol, but Phillips was unsure whether the odor of alcohol came from Pappas' breath. (Tr. 212.)
 {¶ 27} Mary Catherine Stevenson, who worked as a fry cook at Trotters Café on the evening of March 21, 1998, testified that on that evening Pappas put in an order that was "jumbled." (Tr. 199.) Concerning the jumbled order, Stevenson testified: "I wondered what was wrong with her. I looked at Troy, the other cook in there, and asked what was wrong. He asked her, she said she was busy. That's all that was wrong with her. That's all." (Tr. 200.) However, when queried what she thought the problem was, Stevenson testified: "Well, I really didn't know. I thought she might be doing something, but I don't know. I'm not an expert. I was busy also." (Tr. 201.) Stevenson testified that Pappas' behavior was not so unusual that she believed it was necessary to report it to Greg Fox, the manager of Trotters Café, or to Donna Valentine. (Tr. 206.)
 {¶ 28} Jason Barrett testified that on the evening of March 21, 1998, he was at Trotters Café. (Tr. 42.) Barrett, who purportedly had dated Pappas at some point in the past, described an episode that evening between Pappas and him that involved yelling. (Tr. 43.) Barrett testified that Pappas appeared "distraught," (Tr. 43) but he did not smell any odor of alcohol on Pappas. (Tr. 44.) When queried whether he thought Pappas had been drinking that evening, Barrett testified that "[t]hat would just be speculation." (Tr. 45.) Defense counsel's objection to this response was later sustained. (Tr. 45.) For her part, Pappas disputed Barrett's account of the episode between him and her on the evening of March 21, 1998. (Tr. 78-79; 99-101, 103.)
 {¶ 29} On cross-examination, Barrett confirmed that in a previous interview with a liquor department investigator, Barrett stated that he did not recall that Pappas had any difficulty walking or standing while she was working, and he did not recall that Pappas had any bloodshot eyes or slurred speech. (Tr. 46.) Barrett also testified that he did not smell the odor of an alcoholic beverage on Pappas. (Tr. 48.)
 {¶ 30} At the administrative hearing, Kathleen McMillan testified that, on the evening of March 21, 1998, she attended a retirement party that was arranged for McMillan's husband at Trotters Café. (Tr. 219.) McMillan further testified that Pappas was the waitress for the retirement party. (Tr. 221.) McMillan, who previously owned and managed a "bar/lounge-type operation" in New Lexington, Ohio, for approximately 18 years, testified that, when Pappas was a teen, Pappas had worked for McMillan at the restaurant that she previously owned. (Tr. 217, 221.) According to McMillan, on the evening of March 21, 1998, "[Pappas] did an excellent job. She was very professional, business-like. She took our pictures. I think maybe someone might have helped with the food and I think that was just to make sure that the food was served to us hot. She did a great job." (Tr. 222-223.) According to McMillan, she did not notice an odor of alcohol about Pappas' person; she did not notice any slurred speech by Pappas; she did not notice that Pappas had any bloodshot eyes; and she did not notice that Pappas was uncoordinated. (Tr. 224.)
 {¶ 31} Dwayne Bair, who in the past had operated a restaurant and bar, testified that he and his family had dinner with the Newlons on the evening of March 21, 1998. Bair testified about Pappas' stumbling episode. (Tr. 234, 236.) Bair testified: "[Pappas] didn't know my little girl was behind her at that time. * * * My daughter was going around the table and just happened to be right behind at that time." (Tr. 240.) Bair further testified that he did not smell any odor of alcohol about Pappas' person and Pappas did not appear to be intoxicated or under the influence of alcohol. (Tr. 242-243, 248.)
 {¶ 32} At the hearing, Paul G. Fox ("Greg Fox") testified about his intervention in the Pappas-Barrett incident on the evening of March 21, 1998. (Tr. 257-259.) Fox testified that he did not notice if Pappas was intoxicated or under the influence of alcohol on the evening of March 21, 1998. (Tr. 261.) According to Fox, Pappas did not have an odor of alcohol and, she did not stumble when she walked. (Tr. 263.) Fox also confirmed that Donna Valentine was a shareholder of Trotters, but, according to Fox, since 1999 or 2000, Valentine had no involvement with the day-to-day operation of Trotters Café. (Tr. 253.)
 {¶ 33} The relevant inquiry before this court is whether the common pleas court abused its discretion by concluding that reliable, probative, and substantial evidence supported the commission's finding that appellant's agent knowingly and willfully allowed Dena Pappas to become intoxicated on the permit premises on March 21, 1998, in violation of former Ohio Adm. Code4301:1-1-52.
 {¶ 34} In Our Place, Inc., supra, the Supreme Court of Ohio explained:
* * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Id. at 571. (Footnotes omitted.)
 {¶ 35} However, "[w]here the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order."Conrad, at 111. "Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight." Id. Similarly, "where it appears that administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order." Id. at 111-112. See, also, OhioHistorical Soc. v. State Emp. Relations Bd. (1993),66 Ohio St.3d 466, 470-471.
 {¶ 36} Here, according to our review of the record, we do not find that evidence in the record lacks (1) dependability, (2) relevance in determining the issue, and (3) importance and value. Therefore, we cannot conclude that the common pleas court committed error by relying upon evidence in the record.
 {¶ 37} According to the record, there is direct evidence that on the evening of March 21, 1998, appellant's agent, Donna Valentine, voluntarily served two mixed alcoholic drinks to Pappas who was working as a waitress at Trotters Café. Based upon this evidence, the commission reasonably could conclude that appellant's agent knowingly and willfully served alcohol to Pappas on appellant's permit premises.
 {¶ 38} In VFW Post 8586 v. Ohio Liquor Control Comm.
(1998), 83 Ohio St.3d 79, the Supreme Court of Ohio instructed that the commission is permitted to draw reasonable inferences based on evidence before it. Id. at 82. The VFW Post 8586 court also instructed that, unlike the quantum of evidence required to support a criminal conviction, a violation of the Ohio Administrative Code need only be supported by a preponderance of the evidence. Id. at 81. See, also, State v. Stumpf (1987),32 Ohio St.3d 95, 102, certiorari denied (1988), 484 U.S. 1015,108 S.Ct. 1492, rehearing denied, 485 U.S. 1015, 108 S.Ct. 1492, quoting Travelers' Ins. Co. v. Gath (1928), 118 Ohio St. 257,261 (stating that "a preponderance of the evidence means the greater weight of evidence. * * * The greater weight may be infinitesimal, and it is only necessary that it be sufficient to destroy the equilibrium").
 {¶ 39} Here, a reasonable inference can be made from the evidence that Pappas became intoxicated as a result of consuming mixed drinks served to her by Donna Valentine. Prior to her shift at Trotters Café on March 21, 1998, Pappas did not eat dinner. While she was at work, Pappas drank two 8-ounce to 12-ounce mixed drinks that Valentine served to Pappas and that were "relatively strong"; Amy Newlon, a customer at Trotters Café, detected the odor of alcohol on Pappas' breath; David Newlon testified that he could smell "a little bit of alcohol" on Pappas' breath; Sue Pingle, a customer at Trotters Café, stated that Pappas had difficulty taking an order, Pappas appeared to be acting "weird," and Pappas stumbled once; Mary Catherine Stevenson, Trotters fry cook that evening, found an order by Pappas to be "jumbled"; Anne Craig, a paramedic that attended to Pappas after the accident, testified that Pappas had a strong odor of alcohol on her breath; and Teresa Phillips, an EMT who attended to Pappas after the accident, testified that she detected an odor of alcohol. Based upon this evidence, the commission reasonably could infer that Pappas became intoxicated as a result of consuming mixed drinks served to her by Donna Valentine.
 {¶ 40} Furthermore, because Donna Valentine voluntarily served both mixed drinks to Pappas that led to Pappas' intoxication, we conclude that the commission reasonably could infer that Donna Valentine knowingly and willfully allowed Pappas to become intoxicated at the permit premises on the evening of March 21, 1998. Because the commission reasonably could infer that Donna Valentine, appellant's agent, knowingly and willfully allowed Pappas to become intoxicated at the permit premises on the evening of March 21, 1998, we also find that the commission properly could conclude by a preponderance of the evidence that appellant's agent allowed "improper conduct" in and upon the permit premises, a violation of former Ohio Adm. Code 4301:1-1-52.
 {¶ 41} Additionally, because by a preponderance of the evidence the commission could conclude that appellant violated former Ohio Adm. Code 4301:1-1-52, and because under former R.C.4301.25(A)[3] the commission had the authority to revoke a liquor permit for a violation of any lawful rule of the commission, the commission had authority to revoke appellant's liquor permit.
 {¶ 42} Consequently, having found that the commission by a preponderance of the evidence properly could conclude that appellant violated former Ohio Adm. Code 4301:1-1-52, and having found that under former R.C. 4301.25(A) the commission had the authority to revoke appellant's liquor permit for a violation of any lawful rule of the commission, we therefore hold that the common pleas court did not abuse its discretion by finding that the commission's order of revocation was supported by reliable, probative, and substantial evidence.
 {¶ 43} Accordingly, because the common pleas court did not abuse its discretion by finding that the commission's order was supported by reliable, probative, and substantial evidence, we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and French, JJ., concur.
[1] Dena Pappas remarried on November 19, 1999, and she is now known as Dena Garrett. In this opinion, we shall refer to Dena Garrett as "Dena Pappas" or "Pappas."
[2] Since March 1998 when the alleged violations occurred, Ohio Adm. Code 4301:1-1-52 has been revised twice. See 1998-1999 Ohio Monthly Record 1120; 2003-2004 Ohio Monthly Record 2170.
[3] Since appellant violated former Ohio Adm. Code 4301:1-1-52, and since the commission revoked appellant's liquor permit, R.C.4301.25(A) has been amended. See (1998) Am.Sub.H.B. No. 402, 147 Ohio Laws, Part II, 3310, effective March 30, 1999; (2003) Sub.S.B. No. 23, effective April 7, 2004.