OPINION
{¶ 1} Appellant, Twenty Two Fifty, Inc., appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court affirmed orders by appellee, Ohio Liquor Control Commission ("commission"), which found appellant in violation of liquor control laws and regulations.
 {¶ 2} Appellant had obtained a liquor permit for its adult entertainment establishment, Sharkey's, in Montgomery County, Ohio. Montgomery County Sheriff *Page 2 
Detective James Kelly ("Kelly"), retired Ohio Department of Public Safety Agent Herbert Pugh ("Pugh"), and Ohio Investigative Unit Agent Andrew Alanis ("Alanis") discovered liquor control violations at Sharkey's through an undercover investigation. As a result, the Ohio Department of Public Safety ("public safety department") initiated an administrative action against appellant's liquor permit by filing 21 cases against appellant. Appellant denied all allegations, and the commission held an evidentiary hearing on the cases.
 {¶ 3} In case No. 684-05, the public safety department alleged:
 Violation #1: On December 3 and/or December 4, 2003, you and/or your agent and/or employee ANGELA SPURLOCK, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employee ANGELA SPURLOCK did sell and/or traffic in a narcotic and/or [a] hallucinogen, to wit COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 {¶ 4} At the administrative hearing, Kelly testified to the following. On December 3, 2003, Kelly went to Sharkey's and ordered cocaine from Angela Spurlock ("Angela"), an employee and dancer for Sharkey's who was on stage dancing each time Kelly went to Sharkey's. (Tr. at 45.) Although the parties agreed to the cocaine transaction on December 3, 2003, Angela did not have the cocaine on December 3, 2003. Thus, on December 4, 2003, Kelly returned to Sharkey's and, according to Kelly, Angela approached him when he walked in the door and let him know that she did, in fact, have the narcotics. (Tr. at 28.)
 {¶ 5} Next, Kelly testified to the following. After leaving Sharkey's, Kelly returned to the drug unit and tested the substance that Angela gave him. The *Page 3 
substance tested positive. (Tr. at 29.) Thus, Kelly sent the substance to the Miami Valley Crime Lab ("crime lab") for further testing.
 {¶ 6} Kelly then identified, at the hearing, the crime lab report, which was not notarized. The report referred to "[n]arcotics occurring * * * on December 04, 2003" and stated that the substance tested was cocaine. Kelly testified that the cocaine referenced in the report was the substance that Angela provided on December 4, 2003.
 {¶ 7} The public safety department offered the crime lab report into evidence, but appellant's counsel objected to the admission of the report because it was not notarized. The commission accepted the report with reservations; one commission hearing member indicated that he needed to "satisfy [himself] with respect to the admissibility of lab reports, whether they are admissible or not without the notarization." (Tr. at 207-208.) However, thereafter, the commission made no further mention of the crime lab report.
 {¶ 8} In his testimony, Kelly also referred to Angela as Angela Gau-Spurlock. Likewise, Pugh referred to Angela as Angela Gau, and Pugh testified that Angela had several names. (Tr. at 129.)
 {¶ 9} Ultimately, when it issued its decision on the allegations against appellant, the commission dismissed case No. 684-05 and made no determinations on whether or not appellant committed the violation in case No. 684-05. The commission provided no reasons for its decision in case No. 684-05, or for any of the other cases noted below.
 {¶ 10} In case No. 685-05, the public safety department alleged:
 Violation #1: On or about August 25, 2004, you and/or your agent and/or employee ANGELA GAU aka ANGELA M. FOWLER was convicted in the Montgomery County Common Pleas Court for violating in and upon the permit premises, Section 2925.03 of the Ohio Revised Code (Trafficking In Cocaine, A Felony Of The Third Degree), in violation of Section 4301.25(A), of the Ohio Revised Code. *Page 4 
 {¶ 11} At the hearing, Kelly testified that Angela was convicted of trafficking in cocaine. Kelly indicated that he was not subpoenaed for the trafficking cocaine court proceedings involving Angela. However, Kelly testified that he was familiar with the trafficking cocaine case number and that he knew that the conviction was based on the above-noted December 2003 transaction.
 {¶ 12} The public safety department offered into evidence an August 27, 2004 journal entry convicting Angela for trafficking in cocaine. Appellant's counsel objected to the commission admitting into evidence the journal entry, but the commission nonetheless admitted the entry. Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant committed the violation in case No. 685-05.
 {¶ 13} In case No. 686-05, the public safety department alleged:
 Violation #1: On or about November 5, 2004, you and/or your agent and/or employee NICOLE WALLEN was convicted in the Montgomery County Common Pleas Court for violating in and upon the permit premises, Section 2925.03 of the Ohio Revised Code (Trafficking In Cocaine), a felony 3, in violation of Section 4301.25(A), of the Ohio Revised Code.
 {¶ 14} The public safety department offered into evidence a November 8, 2004 journal entry convicting Nicole Wallen ("Nicole") of trafficking in cocaine. Nicole is one of the club dancers with a stage name of Cheyenne. (Tr. at 83.) Appellant's counsel objected to the commission admitting into evidence the journal entry, but the commission nonetheless admitted the entry. *Page 5 
 {¶ 15} At the administrative hearing, Kelly testified that he was familiar with Nicole's above-noted drug trafficking conviction. In particular, Kelly testified: "I know I presented the trafficking charges to the Montgomery County Prosecutor's Office. They were approved. And I know she was found guilty * * * I was there on that trial from start to finish." (Tr. at 78-79.) Kelly further indicated that he testified at Nicole's cocaine trafficking trial.
 {¶ 16} Pugh testified that he purchased cocaine from Nicole at Sharkey's toward the end of the investigation and that Nicole was convicted for the cocaine trafficking. (Tr. at 127.) Furthermore, Pugh stated that he testified at Nicole's cocaine trafficking trial and that, as far as he knew, the cocaine that Nicole sold was admitted into evidence as cocaine. (Tr. at 132.)
 {¶ 17} Similarly, Pugh testified that:
 * * * [A]ny drug, as soon as we finished each evening that we worked, and any drug purchases were made, a field test was performed on the drugs. * * *
 And then, it was turned over to them, and it was placed in their evidence room, and then turned it over to the Miami Valley Crime Lab.
 * * *
 * * * Everything that was purchased and turned over and tested was positive, tested positive for the substance it was.
(Tr. at 133-134.) Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant committed the violation in case No. 686-05. *Page 6 
 {¶ 18} In case No. 687-05, the public safety department alleged:
 Violation #1: On January 2, 2004, you and/or your agent and/or employees ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU and/or ADRIENNE LYNN MCKEE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU did sell a narcotic and/or [a] hallucinogen, to wit COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 {¶ 19} Kelly testified that, on January 2, 2004, Kelly went to Sharkey's and ordered cocaine from Angela, which he obtained the next day. Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant did not commit the violation in case No. 687-05, and the commission dismissed the case.
 {¶ 20} In case No. 688-05, the public safety department alleged:
 Violation #1: On January 3, 2004, you and/or your agent and/or employees ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU and/or ADRIENNE LYNN MCKEE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU did sell a narcotic and/or [a] hallucinogen, to wit COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 {¶ 21} Kelly testified that, on January 3, 2004, he went to Sharkey's and obtained the cocaine that, on January 2, 2004, he agreed to purchase from Angela. Kelly then testified that he sent the purchased substance to the crime lab. Next, Kelly identified at the hearing the crime lab report, which was not notarized. The report referenced *Page 7 
"[n]arcotics occurring * * * on January" 2004, and indicated that the substance tested was cocaine. Kelly testified that the cocaine referenced in the report was the substance that Angela provided on January 3, 2004.
 {¶ 22} The public safety department offered the crime lab report into evidence for case Nos. 687-05 and 688-05. Again, appellant's counsel objected to the report's admissibility because the report was not notarized. As noted above, the commission accepted the report with reservations on the need to consider whether the non-notarized crime lab report was admissible. However, thereafter, the commission made no further mention of the report. Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant did not commit the violation in case No. 688-05, and dismissed the case.
 {¶ 23} In case No. 689-05, the public safety department alleged:
 Violation #1: On January 7, 2004, you and/or your agent and/or employee DAVID STEELE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employee DAVID STEELE did allow agent and/or employee DRUG ABUSE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 {¶ 24} Kelly testified to the following. On January 7, 2004, Kelly was on the outdoor patio of Sharkey's. While on the patio, Kelly saw Sharkey's manager, David Michael Steele, also known as Michael David Steele ("Steele"), and two other men smoking marijuana. Kelly was able to determine that the men were smoking marijuana because he had been on the drug task force for two years, and he received federal narcotics training where "marijuana was burned in front of [him.]" (Tr. at 51-52.) Thus, Kelly knew "the distinct odor of" marijuana. (Tr. at 52.) Ultimately, when it issued its *Page 8 
decision on the allegations against appellant, the commission found that appellant committed the violation in case No. 689-05.
 {¶ 25} In case No. 690-05, the public safety department alleged:
 Violation #1: On February 3, 2004, you and/or your agent and/or employee NICOLE WALLEN "IVORY" and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, MONEY and/or TIPS and/or COUCH DANCES and/or ALCOHOLIC DRINKS, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 {¶ 26} Kelly testified that he was at Sharkey's on February 3, 2004. Then the following testimony took place:
 Q. Do you recall being solicited by Nicole Wallen or any other employee or contractor, or that you believed to be an employee or agent of Sharkey's, soliciting you for or anyone else that you witnessed for any of these things [noted in the charge]?
 A. Yes, definitely.
 Q. What do you recall?
 A. If we're specifically talking about Nicole Wallen, and or any [of] the other ladies that worked there in the club, I cannot by memory remember any time that I was in there that they did not ask me for 10 dollars, or to buy a lap dance from them, or to buy them drinks.
 A. Specifically, when they would ask for drinks, they'd ask for them by name * * *
(Tr. at 56.) Kelly then testified that he had previously bought drinks for the solicitors, but he did not test the drinks to confirm their content.
 {¶ 27} Next, a commission hearing member asked Kelly:
 Q. And did I understand you to say * * * that anytime you were in the establishment, this Nicole Wallen solicited from you either tips, or money, or couch dances, or alcoholic drinks? *Page 9 
 A. Yes, sir, most definitely.
(Tr. at 61-62.)
 {¶ 28} Similarly, Pugh testified:
 Each night that we were in the permit premises * * * we were solicited for drinks. We were also solicited for lap dances. We were also solicited for what they call dollar dances. And they'd go around to the different patrons, and while the music is playing and they have the dancer dancing on the stage, they will dance in front of you for a dollar.
(Tr. at 128.) Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant committed the violation in case No. 690-05.
 {¶ 29} In case No. 691-05, the public safety department alleged:
 Violation #1: On February 5, 2004, you and/or your agent and/or employees NICOLE WALLEN and/or ADRIENNE LYNN MCKEE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees NICOLE WALLEN and/or ADRIENNE LYNN MCKEE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU did sell a narcotic and/or [a] hallucinogen, to wit, MARIJUANA, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #2: On February 5, 2004, you and/or your agent and/or employees NICOLE WALLEN and/or ADRIENNE LYNN MCKEE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, DRINKS and/or TIPS and/or COUCH DANCE, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission. *Page 10 
 {¶ 30} Kelly testified that he was at Sharkey's on February 5, 2004, and was solicited for drinks, tips or couch dances. Kelly also testified that he agreed to buy marijuana from Nicole. According to Kelly, he was to obtain the marijuana the next night because Nicole did not have the marijuana on February 5, 2004. Ultimately, when it issued its decision on the allegations against appellant, the commission concluded that appellant did not commit the violations in case No. 691-05.
 {¶ 31} In case No. 692-05, the public safety department alleged:
 Violation #1: On February 6, 2004, you and/or your agent and/or employee NICOLE WALLEN, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employee NICOLE WALLEN, did sell a narcotic and/or [a] hallucinogen, to wit, MARIJUANA, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #2: On February 6, 2004, you and/or your agent and/or employee NICOLE WALLEN, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employee NICOLE WALLEN, did possess a narcotic and/or [a] hallucinogen, to wit, MARIJUANA, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #3: On February 6, 2004, you and/or your agent and/or employees NICOLE WALLEN and/or ADRIENNE LYNN MCKEE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, DRINKS and/or TIPS and/or COUCH DANCE, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 {¶ 32} In regards to case No. 692-05, Kelly testified to the following. On February 6, 2004, he and another detective returned to Sharkey's to meet Nicole. At Sharkey's, Nicole sat between the other detective and Kelly. Nicole showed Kelly the *Page 11 
"suspected marijuana she had in her hand. And [Kelly] gave her three $20 bills." (Tr. at 64-65.) According to Kelly, his partner also exchanged money for the marijuana. When Pugh testified, he confirmed that he also participated in the marijuana transaction.
 {¶ 33} Ultimately, when it issued its decision on the allegations against appellant, the commission determined that appellant committed violation number one in case No. 692-05. However, the commission determined that appellant did not commit violation numbers two and three in case No. 692-05.
 {¶ 34} In case No. 693-05, the commission alleged:
 Violation #1: On February 10, 2004, you and/or your agent and/or employees NICOLE WALLEN and/or MICHAEL STEELE "JORDAN" "PEACHEE" and/or ADRIENNE LYNN MCKEE, and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, DRINKS and/or TIPS and/or COUCH DANCE, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 {¶ 35} Kelly testified that, on February 10, 2004, he went to Sharkey's and was solicited for drinks, tips, and a couch dance. Kelly also noted that he could not remember if he actually purchased a couch dance on February 10, 2004. Ultimately, when it issued its decision on the allegations against appellant, the commission concluded that appellant committed the violation in case No. 693-05.
 {¶ 36} In case No. 694-05, the public safety department alleged:
 Violation #1: On February 12, 2004, you and/or your agent and/or employees NICOLE WALLEN "TAZ" and/or MICHAEL STEELE and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, LAP DANCES, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission. *Page 12 
 Violation #2: On February 12, 2004, you and/or your agent and/or employees NICOLE WALLEN "TAZ" and/or MICHAEL STEELE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees NICOLE WALLEN "TAZ" and/or MICHAEL STEELE did possess a narcotic and/or [a] hallucinogen, to wit, MARIJUANA, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #3: On February 12, 2004, you and/or your agent and/or employees NICOLE WALLEN "TAZ" and/or MICHAEL STEELE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees NICOLE WALLEN "TAZ" and/or MICHAEL STEELE did allow, DRUG ABUSE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 {¶ 37} Kelly testified that, on February 12, 2004, he was at Sharkey's and that Nicole "or any other individual, agent, or employee of Sharkey's" solicited him for lap dances. (Tr. at 75.) Additionally, Kelly stated that, on February 12, 2004:
 I believe the club employees, specifically the girls, were on the patio area, again, smoking suspected marijuana. I can specifically remember [Wallen] coming back in, * * * and she really had an odor of marijuana clinging to her * * *.
(Tr. at 77-78.) Ultimately, when it issued its decision on the allegations against appellant, the commission determined that appellant committed violation number one in case No. 694-05, but the commission determined that appellant did not commit violation numbers two and three in case No. 694-05.
 {¶ 38} In case No. 695-05, the commission alleged:
 Violation #1: On February 24, 2004, you and/or your agent and/or employees ADRIENNE LYNN MCKEE and/or NICOLE WALLEN "ICE CHEYENNE" and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, SPIRITUOUS LIQUOR and/or TIPS, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission. *Page 13 
 {¶ 39} At the hearing, the public safety department asked Kelly:
 Q. * * * 695-05, again, this is on February 24th, 2004. The allegation is that Adrienne Lynn McKee and Nicole Wallen, or an [unidentified agent or employee, solicited for spirituous liquor, tips.
 I know you previously testified that every time you were there, you were solicited.
 Is that, again, on this date consistent with what you recall at Sharkey's on February 24, 2004?
 A. Yes, definitely.
(Tr. at 80-81.) Kelly indicated that he bought a drink for the solicitor, but did not mention the solicitor's name. (Tr. at 81.) Ultimately, when it issued its decision on the allegations against appellant, the commission concluded that appellant did not commit the violation in case No. 695-05.
 {¶ 40} In case No. 696-05, the public safety department alleged:
 Violation #1: On March 2, 2004, you and/or your agent and/or employees NICOLE WALLEN and/or MICHAEL STEELE and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, LIQUOR DRINKS and/or LAP DANCES, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 Violation #2: On March 2, 2004, you and/or your agent and/or employees NICOLE WALLEN and/or MICHAEL STEELE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees NICOLE WALLEN and/or MICHAEL STEELE did allow, DRUG ABUSE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission. *Page 14 
 {¶ 41} Kelly reiterated that, on March 2, 2004, he was solicited for liquor, drinks, and lap dances at Sharkey's. (Tr. at 82.) In addition, Kelly testified to the following. On March 2, 2004, he was on the patio with Nicole and another dancer for Sharkey's. The individuals were smoking marijuana and told Kelly that Steele "gets high with us" and that Steele "doesn't care if we smoke, as long as we smoke dope out here on the patio." (Tr. at 83.) Ultimately, when it issued its decision on the allegations against appellant, the commission concluded that appellant committed violation numbers one and two in case No. 696-05.
 {¶ 42} In case No. 697-05, the public safety department alleged:
 Violation #1: On March 3, 2004, you and/or your agent and/or employees MICHAEL STEELE and/or TIATA NICOLE COLLINSWORTH and/or NICOLE WALLEN and/or JESSICA SPARKS and/or ANGELA MARIE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA SPURLOCK-GAU and/or ADRIENNE LYNN MCKEE "PEACHES" and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, TIPS and/or MONEY, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 Violation #2: On March 3, 2004, you and/or your agent and/or employees ADRIENNE LYNN MCKEE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or MICHAEL STEELE and/or ANGELA SPURLOCK-GAU, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees ADRIENNE LYNN MCKEE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or MICHAEL STEELE and/or ANGELA SPURLOCK-GAU did sell a narcotic and/or [a] hallucinogen, to wit, COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #3: On March 3, 2004, you and/or your agent and/or employees ADRIENNE LYNN MCKEE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or MICHAEL STEELE and/or ANGELA SPURLOCK-GAU, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees ADRIENNE LYNN MCKEE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or MICHAEL STEELE and/or ANGELA SPURLOCK-GAU did allow, DRUG ABUSE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission. *Page 15 
 {¶ 43} In regards to case No. 697-05, Kelly provided the following testimony:
 [Q.] On March 3rd, 2004, did you have occasion to go to Sharkey's, as well?
 A. I'll have to review the report, and I don't believe I have the 3rd here.
 [Q.] * * * Do you recall entering into any kind of discussion with Adrienne McKee or Angela Spurlock with regard to purchase of any cocaine?
 A. I believe that was on the 4th. I could be wrong, but I thought that was March 4th.
 Q. Is that March 4th was when you purchased it or when it was negotiated?
 Do you recall?
 A. No, sir.
(Tr. at 88-89.) Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant did not commit violation numbers one, two or three in case No. 697-05.
 {¶ 44} In case No. 698-05, the commission alleged:
 Violation #1: On March 4, 2004, you and/or your agent and/or employees MICHAEL STEELE and/or DANCERS NICOLE WALLEN AKA "CHEYNNE" and/or ANGELA GAU AKA "ACE" and/or JESSICA SPARKS and/or TIATA COLLINSWORTH and/or ADRIENN[E] MCKEE, did *Page 16 
knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees MICHAEL STEELE and/or DANCERS NICOLE WALLEN AKA "CHEYNNE" and/or ANGELA GAU AKA "ACE" and/or JESSICA SPARKS and/or TIATA COLLINSWORTH and/or ADRIENN[E] MCKEE, did allow agent and/or employee ALLOWING DRUG ABUSE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #2: On March 4, 2004, you and/or your agent and/or employees MICHAEL STEELE and/or DANCERS NICOLE WALLEN AKA "CHEYNNE" and/or ANGELA GAU AKA "ACE" and/or JESSICA SPARKS and/or TIATA COLLINSWORTH and/or ADRIENN[E] MCKEE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees MICHAEL STEELE and/or DANCERS NICOLE WALLEN AKA "CHEYNNE" and/or ANGELA GAU AKA "ACE" and/or JESSICA SPARKS and/or TIATA COLLINSWORTH and/or ADRIENN[E] MCKEE, did allow PATRONS POSSESSING and/or SMO[K]ING MARIJUANA IN PERMIT PREMISES, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #3: On March 4, 2004, you and/or your agent and/or employees MICHAEL STEELE and/or DANCERS NICOLE WALLEN AKA "CHEYNNE" and/or ANGELA GAU AKA "ACE" and/or JESSICA SPARKS and/or TIATA COLLINSWORTH and/or ADRIENN[E] MCKEE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees MICHAEL STEELE and/or DANCERS NICOLE WALLEN AKA "CHEYNNE" and/or ANGELA GAU AKA "ACE" and/or JESSICA SPARKS and/or TIATA COLLINSWORTH and/or ADRIENN[E] MCKEE, did possess a narcotic and/or [a] hallucinogen, to wit, COCAINE and/or MARIJUANA, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #4: On March 4, 2004, you and/or your agent and/or employees MICHAEL STEELE and/or DANCERS NICOLE WALLEN AKA "CHEYNNE" and/or ANGELA GAU AKA "ACE" and/or JESSICA SPARKS and/or TIATA COLLINSWORTH and/or ADRIENN[E] MCKEE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees MICHAEL STEELE and/or DANCERS NICOLE WALLEN AKA "CHEYNNE" and/or ANGELA GAU AKA "ACE" and/or JESSICA SPARKS and/or TIATA COLLINSWORTH and/or ADRIENN[E] MCKEE, did SELL a narcotic and/or [a] hallucinogen, to wit, COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission. *Page 17 
 Violation #5: On March 4, 2004, you and/or your agent and/or employee MICHAEL STEELE and/or DANCERS NICOLE WALLEN AKA "CHEYNNE" and/or ANGELA GAU AKA "ACE" and/or JESSICA SPARKS and/or TIATA COLLINSWORTH and/or ADRIENN[E] MCKEE an/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, MONEY, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 Violation #6: On or about March 4, 2004, you and/or your agent and/or employee ADRIENNE MCKEE, was convicted in the Montgomery County Common Pleas Court for violating Case No. 2004 CR 01502 (trafficking in cocaine), a felony of the fifth degree, in violation of Section 2929.13, of the Ohio Revised Code.
 {¶ 45} Kelly testified that, on March 4, 2004, he was at Sharkey's and bought cocaine from Jessica Sparks ("Jessica"), an employee with Sharkey's. Kelly also testified that John Randall McCoy ("McCoy") "was all a part of this. He's the one that went and picked up the dope" on March 4, 2004. (Tr. at 96.)
 {¶ 46} The public safety department also offered into evidence a March 29, 2005 journal entry convicting McCoy of trafficking in cocaine, and the public safety department offered into evidence an indictment indicating that McCoy's trafficking conviction is based on events that occurred on March 4, 2004, and that involved Jessica. Although the public safety department labeled the above exhibits under case No. 697-05, they had the exhibits identified in case No. 698-05, and noted that case No. *Page 18 
698-05 is "connected with regard to [the] charges" in case No. 697-05. (Tr. at 96.) Appellant's counsel objected to the admission of such evidence, but the commission allowed the evidence.
 {¶ 47} The public safety department also asked Kelly if, "on March 4th, 2004, you and/or the officers with you were solicited by employees Nicole Wallen, Angela Gau, and/or Jessica Sparks, or Tiata Collinsworth, or Adrienne McKee for money?" (Tr. at 90.) Kelly responded: "That's correct. Yes." (Tr. at 90.) Kelly also confirmed that Tiata Collinsworth was an employee or agent for Sharkey's.
 {¶ 48} Pugh testified that he was at Sharkey's on March 4, 2004. He then testified that, on that date, McCoy obtained the cocaine for Jessica. Next, Pugh testified:
 * * * Pretty much all the time, once we were in there, and the dancers got to know us, and we got to know them, they felt comfortable to ask us if we wanted to partake in smoking of marijuana out on the patio.
(Tr. at 121.)
 {¶ 49} Pugh noted that the dancers proceeded to smoke marijuana. According to Pugh, he could detect the smell of marijuana:
 From [his] experience of working different undercover investigations through the years and the training [he had] with DEA school, the basic and the advanced, in other narcotic schools, the smell of the cigarette that they were smoking was not a regular tobacco. It had the smell of marijuana.
(Tr. at 122.)
 {¶ 50} The public safety department then asked Pugh if he had any doubt that the individuals were smoking marijuana on the patio on March 4, 2004. Pugh stated: "I *Page 19 
would say so, without testing it. To make a positive I.D., I didn't test it, no. I didn't make a field test." (Tr. at 122.)
 {¶ 51} The public safety department next asked Pugh:
 [Q.] * * * [O]n [March 4, 2004], as well as any other dates, did you observe — during your investigation, did you observe marijuana, or what you perceived to be marijuana, being smoked on the permit premises?
 A. That's correct.
(Tr. at 123-124.)
 {¶ 52} The public safety department moved to dismiss violation number six in case No. 698-05. Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant committed violation numbers four and five in case No. 698-05. However, the commission concluded that appellant did not violate numbers one, two, and three in case No. 698-05.
 {¶ 53} In case No. 699-05, the public safety department alleged:
 Violation #1: On March 11, 2004, you and/or your agent and/or employees JESSICA SPARKS and/or MICHAEL STEELE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees JESSICA SPARKS and/or MICHAEL STEELE, did allow [sic] sell a narcotic and/or [a] hallucinogen, to wit, COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #2: On March 11, 2004, you and/or your agent and/or employees NICOLE WALLEN "PEACHES" "JORDAN" and/or ADRIENNE LYNN MCKEE and/or ANGELA (GAU) SPURLOCK FOWLER and/or ANGELA MARIE and/or ANGELA SPURLOCK-GAU and/or MICHAEL STEELE and/or your unidentified agent and/or employee did solicit and or allowed others to solicit in and upon your permit premises for a thing of value, to wit, TIPS and/or MONEY, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission. *Page 20 
 Violation #3: On or about November 5, 2004, you and/or your agent and/or employee NICOLE WALLEN, was convicted in the Montgomery County Common Pleas Court for violating Section 4301.25(A), (trafficking in cocaine), a felony, in violation of Section 2925.03(A)(1), of the Ohio Revised Code.
 {¶ 54} However, the public safety department elicited no testimony or evidence on case No. 699-05. Thus, when it issued its decision on the allegations against appellant, the commission found that appellant did not commit the violations in case No. 699-05.
 {¶ 55} In case No. 700-05, the public safety department alleged:
 Violation #1: On April 5, 2004, you and/or your agent and/or employees TIFFANY and/or ICE and/or ACE and/or CHEYENNE and/or MICHAEL STEELE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employee MICHAEL STEELE, did sell a narcotic and/or [a] hallucinogen, to wit, COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #2: On April 5, 2004, you and/or your agent and/or employee TIFFANY and/or ICE and/or ACE and/or CHEYENNE and/or MICHAEL STEELE and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, DRINKS and/or DANCES, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 {¶ 56} Again, the public safety department elicited no testimony or evidence on case No. 700-05. Thus, when it issued its decision on the allegations against appellant, the commission found that appellant did not commit the violations in case No. 700-05. *Page 21 
 {¶ 57} In case No. 701-05, the public safety department alleged:
 Violation #1: On April 15, 2004, you and/or your agent and/or employees "ANDREA" and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, LAP DANCES and/or TIPS, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 {¶ 58} Alanis testified that he was at Sharkey's on April 15, 2004, and that he was approached by several dancers of Sharkey's who asked if he would "like to appreciate their dance for a dollar." (Tr. at 142.) Alanis would give the dancers money after they solicited him. Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant committed violation number one in case No. 701-05.
 {¶ 59} In case No. 702-05, the public safety department alleged:
 Violation #1: On April 7, 2004, you and/or your agent and/or employee NICOLE WALLEN, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employee NICOLE WALLEN, did traffic in and/or sell a narcotic and/or [a] hallucinogen, to wit COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #2: On April 7, 2004, you and/or your agent and/or employee ANGELA GAU and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, MONEY and/or DANCES, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 Violation #3: On or about August 27, 2004, you and/or your agent and/or employee ANGELA GAU, was convicted in the Montgomery County Common Pleas Court for violating Section 4301.25(A), (trafficking in cocaine), a felony, in violation of Section 2929.13, of the Ohio Revised Code. *Page 22 
 Violation #4: On or about August 27, 2004, you and/or your agent and/or employee NICOLE WALLEN, was convicted in the Montgomery County Common Pleas Court for violating Section 4301.25(A), (trafficking in cocaine), a felony, in violation of Section 2925.03(A)(1), of the Ohio Revised Code.
 {¶ 60} Kelly testified that he was at Sharkey's on April 7, 2004, and observed "Angela Gau and/or other agents or employees of Sharkey's solicit for money or dancing on that day[.]" (Tr. at 102.) Kelly also testified that, on April 7, 2004, he agreed to purchase cocaine from Nicole. Kelly noted that he was to obtain the cocaine the next day. Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant committed violation number two in case No. 702-05, but the commission determined that appellant did not commit violation numbers one, three, and four in case No. 702-05.
 {¶ 61} In case No. 703-05, the public safety department alleged:
 Violation #1: On April 8, 2004, you and/or your agent and/or employees Cheyenne [last name unknown] and/or MICHAEL FERRARO and/or MICHAEL STEELE, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees CHEYENNE [last name unknown] and/or MICHAEL FERRARO and/or MICHAEL STEELE did sell a narcotic and/or [a] hallucinogen, to wit COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission.
 Violation #2: On April 8, 2004, you and/or your agent and/or employee CHEYENNE [last name unknown], did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employee CHEYENNE [last name unknown] did possess a narcotic and/or [a] hallucinogen, to wit COCAINE, in violation of 4301:1-1-52, a regulation of the Ohio Liquor Control Commission. *Page 23 
 Violation #3: On April 8, 2004, you and/or your agent and/or employee CHEYENNE [last name unknown] and/or your unidentified agent and/or employee did solicit and/or allowed others to solicit in and upon your permit premises for a thing of value, to wit, DRINKS and/or LAP DANCES, in violation of 4301:1-1-59, a rule of the Ohio Liquor Control Commission.
 Violation #4: On or about November 5, 2004, you and/or your agent and/or employee NICOLE WALLEN, was convicted in the Montgomery County Common Pleas Court for violating Section 4301.25(A), (trafficking in cocaine), a felony, in violation of Section 2925.03(A)(1), of the Ohio Revised Code.
 {¶ 62} Kelly testified that, on April 8, 2004, he went to Sharkey's to obtain the cocaine he previously agreed to purchase from Nicole, who is also known as Cheyenne. Kelly testified that Pugh was involved in the transaction, and Pugh confirmed at the hearing that he also purchased cocaine from Nicole at Sharkey's on April 8, 2004. Ultimately, when it issued its decision on the allegations against appellant, the commission found that appellant did not commit violation numbers one, two, three or four.
 {¶ 63} In case No. 745-05, the public safety department alleged that, on April 23, 2004, Steele possessed cocaine on permit premises in violation of liquor control regulations. However, the public safety department moved to dismiss case No. 745-05 because Kelly and Pugh testified that Steele smoked marijuana on April 23, 2004, and the witnesses made no mention that Steele possessed cocaine that day.
 {¶ 64} Lastly, when appellant presented its defense, liquor permit holder Michael C. Ferraro ("Ferraro") provided the following testimony. Ferraro testified that, when the investigation came about, "everyone that was listed in it [was] terminated." (Tr. at 150.) Likewise, the following testimony took place with Ferraro: *Page 24 
 Q. You're not disputing that Nicole Wallen worked as a dancer at Sharkey's, are you?
 A. No, I'm not.
 Q. And you're not disputing that she was convicted of trafficking in cocaine, are you?
 A. No.
 * * *
 Q. Angela Gau, are you aware that she was convicted of trafficking in cocaine, and per testimony of Detective Kelly, that she also was convicted for events that occurred at Sharkey's?
 A. Well, not until the point that after it happened.
 * * *
 [Q.] Does it bother — well, I won't ask you if it bothers you.
 Not only that this illegal drug activity was going on over a prolonged period of time, that it was out in the open, or at least out in the permit premises, does that bother you?
 A. It's extremely insulting. That's why the people were terminated without question.
(Tr. at 158-159.)
 {¶ 65} Michael J. Ferraro ("Michael J."), Ferraro's father, also testified on appellant's behalf. Michael J. testified that he owns the building where Sharkey's is located, and he would assist Ferraro in the business affairs of Sharkey's. Michael J. also testified that, "since the close out of the investigation in April of 2004, * * * the manager and the assistant manager and some of the girls that [he] heard were involved" were terminated. (Tr. at 171.) *Page 25 
 {¶ 66} Finally, after the commission determined the above violations, the commission issued a financial sanction against appellant and suspended appellant's liquor license. Thereafter, appellant appealed to the trial court, and the trial court affirmed the commission's orders.
 {¶ 67} Appellant appeals, raising one assignment of error:
 THE COMMON PLEAS COURT ABUSED ITS DISCRETION IN AFFIRMING THE ORDERS OF THE LIQUOR CONTROL COMMISSION, IN THAT THE ORDERS ARE NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND ARE NOT IN ACCORDANCE WITH LAW.
 {¶ 68} Cases before the commission are civil in nature and, consequently, the burden of proof is by a preponderance of the evidence.Angola Corp. v. Liquor Control Comm. (1972), 33 Ohio App.2d 87, 92. "`[A] preponderance of the evidence means the greater weight of evidence. * * * The greater weight may be infinitesimal, and it is only necessary that it be sufficient to destroy the equilibrium[.]'"Trotters, Inc. v. Liquor Control Comm., Franklin App. No. 05AP-880,2006-Ohio-2448, at ¶ 38, quoting Travelers' Ins. Co. v. Gath (1928),118 Ohio St. 257, 261.
 {¶ 69} When a common pleas court reviews an order of an administrative agency, such as the commission, it:
 * * * [M]ay affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.
R.C. 119.12. *Page 26 
 {¶ 70} The common pleas court's "`review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof."'" Big Bob's, Inc. v. Ohio LiquorControl Comm., 151 Ohio App.3d 498, 2003-Ohio-418, at ¶ 14, quotingLies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108, 111.
 {¶ 71} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621. According to the Ohio Supreme Court:
 * * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Pons at 621.
 {¶ 72} However, an appellate court has plenary review of purely legal questions. Big Bob's, Inc., at ¶ 14.
 {¶ 73} Here, appellant first contends that the trial court abused its discretion in affirming the commission's orders in case Nos. 685-05 and 686-05 that found R.C. 4301.25(A)(1) violations. R.C. 4301.25(A)(1) states that the liquor control commission *Page 27 
may suspend or revoke a liquor permit for a "[c]onviction of the [permit] holder or the holder's agent or employee for violating * * * a section of [Chapters 4301 or 4303] of the Revised Code or for a felony[.]"
 {¶ 74} The R.C. 4301.25(A)(1) violations in case Nos. 685-05 and 686-05 are based, respectively, on Angela and Nicole being convicted for cocaine trafficking, a felony according to R.C. 2925.03. As noted above, the public safety department submitted into evidence the judgment entries confirming such convictions.
 {¶ 75} Nonetheless, appellant argues that the public safety department "failed to submit any evidence that [Angela] or [Nicole] remained employees of Sharkey[']s once the investigation was disclosed to Mr. Ferraro. Therefore, at the time of the convictions the statutory requirements under R.C. 4301.25(A)(1) were not met."
 {¶ 76} In WCI, Inc. v. Ohio Liquor Control Comm., Franklin App. No. 05AP-896, 2006-Ohio-2751, at ¶ 2-3, 8, the commission suspended WCI, Inc.'s liquor license, in pertinent part, under R.C. 4301.25(A)(1) after a dancer for WCI, Inc.'s adult entertainment establishment sold cocaine to an undercover detective in February 2003, and, as a result, the dancer was subsequently convicted of trafficking in cocaine in October 2003. The trial court upheld the suspension. WCI, Inc. at ¶ 10. However, we reversed the suspension upon concluding that the evidence failed to establish that the dancer worked for WCI, Inc.'s adult entertainment establishment at the time of her conviction, or that she became an employee following her conviction. Id. at ¶ 28-35. We noted that the dancer was terminated around February 2003, and that, in March 2003, she received a criminal trespass notice denoting that she was not welcome at WCI, Inc.'s business. Id. at ¶ 28. *Page 28 
 {¶ 77} Here, the public safety department provided no evidence establishing that Angela and Nicole were Sharkey's employees when they were convicted of cocaine trafficking. Likewise, we can make no such inference given Michael J. and Ferraro's testimonies that individuals involved in the illicit activities at Sharkey's were terminated and given Michael J.'s indication that, "since the close out of the investigation in April of 2004, * * * the manager and the assistant manager and some of the girls that [he] heard were involved" were terminated. (Tr. at 171.) Thus, under the dictates of WCI, Inc., we conclude that the trial court abused its discretion in upholding the R.C. 4301.25(A)(1) violations in case Nos. 685-05 and 686-05.
 {¶ 78} In so concluding, we reject appellee's contention that "the underlying misconduct of the drug sales which were evidenced and supported by the convictions support a violation of the Rule 52 charges, so any error would be harmless." In WCI, Inc., we reversed the R.C.4301.25(A)(1) violation, even though the evidence established that the conviction leading to the violation stemmed from cocaine trafficking from an individual employed by the permit holder at the time of the trafficking.
 {¶ 79} Next, appellant contends that the trial court abused its discretion in affirming the commission's orders in case Nos. 689-05, 692-05, 696-05, and 698-05 that found violations of Ohio Adm. Code4301:1-1-52 ("Rule 52"). Rule 52, in pertinent part, prohibits a permit holder or an agent or employee of the permit holder from knowingly or willfully allowing on permit premises any person to use or sell a drug, dangerous drug, controlled substance or narcotic.
 {¶ 80} As noted above: (1) case No. 689-05 concerns Sharkey's manager, Steele, smoking marijuana with his companions on permit premises on January 7, 2004; *Page 29 
(2) case No. 692-05 concerns Sharkey's dancer, Nicole, selling marijuana on permit premises on February 6, 2004; (3) case No. 696-05 concerns Sharkey's dancer, Nicole, smoking marijuana with her companions on permit premises on March 2, 2004, and Sharkey's manager, Steele, allowing such drug use; and (4) case No. 698-05 concerns Sharkey's dancer, Jessica, selling cocaine on permit premises on March 4, 2004. Appellant argues that the commission abused its discretion in finding violations on the above matters because the record contained no laboratory analysis indicating that any of the above-noted substances were in fact cocaine or marijuana.
 {¶ 81} In support of its argument, appellant relies on Ohio Adm. Code4301:1-1-38, which establishes, in pertinent part, that in a hearing before the commission, a laboratory report signed by the person performing the analysis is prima facie evidence of the content, identity, characteristics, and chemical analysis of the substance. Ohio Adm. Code 4301:1-1-38 also states that attached to the report shall be a copy of a notarized statement by the signer of the report: (1) giving the name of the signer; (2) stating that the signer is an employee of the laboratory issuing the report and that performing the analysis is part of the signer's regular duties; and (3) giving an outline of the signer's education, training, and experience in performing the pertinent analysis.
 {¶ 82} To be sure, Ohio Adm. Code 4301:1-1-38 establishes that the signed and notarized crime lab report is prima facie evidence of the composition of a substance. D. Michael Smith Ent., Inc. v. Ohio LiquorControl Comm. (Oct. 29, 1997), Summit App. No. 18332; 1800 Riverhouse,Inc. v. Ohio Liquor Control Comm., Franklin App. No. 03AP-732,2004-Ohio-3831, at ¶ 12. "`[P]rima facie evidence means evidence which is *Page 30 
sufficient to establish the fact, unless rebutted[.]'" D. Michael SmithEnt., Inc., quoting 42 Ohio Jurisprudence 3d (1983), 213, Evidence and Witnesses, Section 5.
 {¶ 83} However, "[t]here is no requirement * * * that a [control liquor] violation be proved by direct evidence. The commission is permitted to draw reasonable inferences based on the evidence before it." VFW Post 8586 v. Ohio Liquor Control Comm. (1998),83 Ohio St.3d 79, 82. Thus, we previously held that, in a liquor control violation case based on drug dealing on permit premises, the public safety department was not required to provide a lab report to prove the existence of a particular drug. Digrat, Inc. v. Ohio Liquor ControlComm. (Dec. 27, 2001), Franklin App. No. 01AP-391. Rather, we concluded that the drug dealing was properly proven through circumstantial evidence from the investigating officers' testimony. Id.
 {¶ 84} Similarly, in N.R., Inc. v. Ohio Liquor Control Comm. (1996),113 Ohio App.3d 198, 205, the Ninth District Court of Appeals concluded that the public safety department sufficiently established through a law enforcement officer's testimony that it was indeed beer that a liquor establishment unlawfully sold after 2:30 a.m. Specifically, the officer testified that, after 2:45 a.m., he observed the liquor establishment manager "pour a lime green or yellowish beverage with `a head on it' that, based on his experience as a police officer, appeared to be a mug of beer." Id.
 {¶ 85} Accordingly, here, we conclude that the public safety department could have established the existence of marijuana or cocaine in the above-noted drug related violations without a signed and notarized crime lab report. Thus, we next examine whether the record otherwise establishes the existence of marijuana or cocaine in the above-noted violations. *Page 31 
 {¶ 86} In case No. 689-05, we conclude that the evidence established that Steele and his companions smoked marijuana on permit premises on January 7, 2004. Specifically, Kelly testified that he observed Steele and his companions smoking marijuana on the patio at Sharkey's, and Kelly stated that he was able to determine that the individuals were smoking marijuana because of his training and because he knows "the distinct odor of" marijuana. (Tr. at 52.)
 {¶ 87} Similarly, in case No. 696-05, we conclude that the evidence established that Sharkey's dancer, Nicole, and her companions smoked marijuana on permit premises on March 2, 2004, and that Steele allowed such drug abuse. Specifically, Kelly, who is trained in the detection of the odor of marijuana, testified that the individuals were smoking marijuana at Sharkey's on March 2, 2004. Kelly also testified that Nicole stated that Steele did not mind if the Sharkey's employees "smoked dope" on the patio at Sharkey's. (Tr. at 83.)
 {¶ 88} Next, in reviewing case Nos. 692-05 and 698-05, cases involving drug trafficking, we note that Pugh did testify about the results of testing performed on drugs purchased from Sharkey's employees. Specifically, Pugh testified that "[everything that was purchased and turned over and tested was positive, tested positive for the substance it was." (Tr. at 134.) However, the public safety department failed to establish that Pugh obtained such information through a signed, notarized crime lab report that would constitute prima facie evidence under Ohio Adm. Code 4301:1-1-38. Regardless, as noted above, we may consider other evidence that established the existence of the drugs involved in the trafficking in case Nos. 692-05 and 698-05. See VFW Post8586 at 82; Digrat, Inc.; N.R., Inc. at 205. *Page 32 
 {¶ 89} Thus, in case No. 698-05, regarding cocaine trafficking with Jessica, we conclude that the commission could have properly inferred that Kelly purchased cocaine from Jessica, given that McCoy obtained the exchanged substance and that McCoy's conduct led to his conviction for trafficking in cocaine. Likewise, in case No. 692-05, marijuana trafficking with Nicole, we conclude that the commission could have properly inferred the exchange of marijuana based on Kelly's familiarity with marijuana through his above-noted drug task force experience and his training in marijuana detection. Again, we make such conclusions in light of our limited abuse of discretion review and noting the mere preponderance of the evidence burden of proof before the commission.
 {¶ 90} In concluding as above, we note appellant's contention that the commission rendered inconsistent decisions on the Rule 52 cases. Specifically, appellant asserts that "[c]ase Nos. 684-05, 687-05, 688-05, 691-05, 697-05, 699-05, 700-05, 703-05 and 745-05 all involved drug charges and were dismissed in their entirety. The [commission also heard the evidence and dismissed all the drug charges in [c]ase Nos. 694-05 * * * and 702-05 * * * and four of the five drug charges in [c]ase No. 698-05[.]" (Emphasis omitted.)
 {¶ 91} However, we find reasonable rationale for the commission's dismissals on some of the cases. As an example, the record did not support some of the alleged violations. Specifically, the public safety department moved to dismiss case No. 745-05 because the case alleged Steele possessing cocaine on April 23, 2004, and neither Kelly nor Pugh mentioned Steele possessing cocaine on that date. Likewise, Kelly could not remember the incidents alleged in case No. 697-05, and the public safety *Page 33 
department submitted no evidence on the cocaine trafficking incidents in case Nos. 699-05 and 700-05.
 {¶ 92} Likewise, some of the dismissed Rule 52 charges involve duplicitous allegations. In particular, the commission found that appellant committed violations in case Nos. 685-05 and 686-05, which concern, respectively, Angela and Nicole being convicted on drug trafficking charges. Upon doing so, the commission dismissed duplicitous charges alleging the same violations in case Nos. 699-05, 702-05, and 703-05.
 {¶ 93} We also see continuity in the commission finding a violation in case No. 692-05, but dismissing case No. 691-05. In case No. 691-05, Kelly and Pugh ordered marijuana from Nicole on February 5, 2004, but in case No. 692-05, Kelly and Pugh obtained the ordered marijuana from Nicole on February 6, 2004. Under such a scenario, we may reasonably infer that the commission dismissed case No. 691-05 as duplicitous to case No. 692-05, given that both cases involve a marijuana transaction that was ultimately consummated on February 6, 2004, i.e., case No. 692-05.
 {¶ 94} Lastly, while we cannot glean from the record why the commission dismissed the other cases noted by appellant, we ultimately note that, under R.C. 119.12, a trial court "may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." Here, in light of the trial court's explicit duties under R.C. 119.12, we conclude that the trial court did not abuse its discretion in upholding the above Rule 52 violations because, as established above, the Rule 52 *Page 34 
violations were supported by "reliable, probative, and substantial evidence" and were "in accordance with law."
 {¶ 95} Next, appellant argues that the trial court abused its discretion in affirming the commission's orders in case Nos. 690-05, 693-05, 694-05, 696-05, 701-05, and 702-05 that found violations of Ohio Adm. Code 4301:1-1-59 ("Rule 59"), which, in pertinent part, states that a permit holder, or employees or agents of the permit holder, shall not solicit or approach a patron for the purchase of beer or intoxicating liquor or for money or anything of value for the solicitor or any other person.
 {¶ 96} Here, case No. 690-05 concerns Nicole soliciting either money, tips, couch dances or alcoholic drinks on February 3, 2004. In that case, Kelly generally testified that:
 A. If we're * * * talking about Nicole Wallen, and or any or the other ladies that worked there in the club, I cannot by memory remember any time that I was in there that they did not ask for me for 10 dollars, or to buy a lap dance from them, or to buy them drinks.
(Tr. at 56.)
 {¶ 97} Likewise, Kelly responded "yes" to a commission hearing member's question:
 Q. And did I understand you to say * * * that anytime you were in the establishment, this Nicole Wallen solicited from you either tips, or money, or couch dances, or alcoholic drinks?
(Tr. at 61.)
 {¶ 98} Similarly, Pugh generally testified that:
 A. Each night that we were in the permit premises * * * we were solicited for drinks. We were also solicited for lap dances. We were also solicited for what they call dollar dances. And they'd go around to the different patrons, and while the music is playing and they have the dancer dancing on the stage, they will dance in front of you for a dollar. *Page 35 
(Tr. at 128.) The above testimony established that Nicole solicited couch dances, i.e., anything of value, or money, tips or alcoholic drinks on February 3, 2004, as alleged in case No. 690-05. The above testimony also established that, in the other cases discussed more fully below, Sharkey's employees improperly solicited Pugh and Kelly when they visited Sharkey's.
 {¶ 99} Case No. 693-05 concerns Sharkey's employees soliciting for drinks, tips or a couch dance on February 10, 2004. Kelly testified that, on February 10, 2004, he went to Sharkey's and was solicited for drinks, tips, and a couch dance. However, appellant challenges Kelly's memory given that he also testified that he could not remember if he actually purchased the couch dance on February 10, 2004. However, while Kelly admitted that he could not remember if he purchased a couch dance, he had no hesitancy in testifying that he was improperly solicited on February 10, 2004. Thus, the above testimony established that Sharkey's employees solicited for either drinks, tips or a couch dance on February 10, 2004.
 {¶ 100} Case No. 694-05 concerns Nicole or a Sharkey's employee or agent soliciting for lap dances on February 12, 2004. Again, Kelly testified that, on February 12, 2004, he was at Sharkey's and that Nicole "or any other individual, agent, or employee of Sharkey's" solicited him for lap dances. (Tr. at 75.) Thus, such testimony established the violation in case No. 694-05.
 {¶ 101} Case No. 696-05 involves a Sharkey's employee or agent soliciting for lap dances on March 2, 2004, and Kelly testified that, on March 2, 2004, he was solicited *Page 36 
for "liquor, drinks [and] lap dances" at Sharkey's. (Tr. at 82.) Such testimony established the violation in case No. 696-05.
 {¶ 102} Case No. 698-05 involves Sharkey's employees soliciting for money on March 4, 2004, and Kelly testified that, on that day, he was solicited by "employees Nicole Wallen, Angela Gau, and/or Jessica Sparks, or Tiata Collinsworth, or Adrienne McKee for money[.]" (Tr. at 90) Such testimony established a violation in case No. 698-05.
 {¶ 103} Case No. 701-05 involves Sharkey's employees soliciting for lap dances or tips on April 15, 2004. Alanis provided testimony to support such an allegation when he stated that he was at Sharkey's on April 15, 2004, and that he was approached by several Sharkey's dancers who asked if he would "like to appreciate their dance for a dollar." (Tr. at 142.)
 {¶ 104} Lastly, case No. 702-05 involves Sharkey's employees soliciting for money or dances on April 7, 2004. Kelly testified that, on April 7, 2004, he was at Sharkey's and "Angela Gau and/or other agents or employees of Sharkey's solicited] for money or dancing[.]" (Tr. at 102.) Such testimony established a violation in case No. 702-05.
 {¶ 105} In concluding as above, we reject appellant's claim that Kelly, Pugh, and Alanis were making legal conclusions about being solicited by Sharkey's employees. The witnesses were not making legal conclusions, but were testifying about events that occurred at Sharkey's in regards to the Rule 59 violations.
 {¶ 106} We further reject appellant's contention that the record failed to establish that Sharkey's employee's solicited alcoholic, as opposed to non-alcoholic, drinks from the witnesses. We reject such a contention because Kelly affirmed that "anytime [he *Page 37 
was] in the establishment, this Nicole Wallen solicited * * * alcoholic drinks[.]" (Tr. at 61.)
 {¶ 107} Next, we acknowledge appellant's contention that the commission rendered inconsistent decisions on the Rule 59 cases. Specifically, appellant asserts that, although the commission found violations in the cases noted above, the commission found that appellant did not violate Rule 59 in case Nos. 691-05 and 695-05, even though Kelly testified in those cases that Sharkey's employees solicited for either drinks, tips or couch dances. We also note that the commission found that appellant did not violate Rule 59 in case Nos. 692-05 and 703-05, even though Pugh and Kelly testified that they were at Sharkey's on the dates pertaining to those cases, and Pugh and Kelly testified that each time they were at Sharkey's they were improperly solicited by Sharkey's employees.
 {¶ 108} Arguably, the commission rendered inconsistent decisions on the ultimate issues before it when it determined that violations existed under Rule 59 in some cases, but, despite similar evidence, found no such violations in other cases. Nonetheless, as demonstrated below, we have no cause to disturb the commission's determinations that appellant committed the above-noted Rule 59 violations.
 {¶ 109} As an example, in regards to an intermediate R.C. 119.12
appeal to the trial court, "where a witness' testimony is internally inconsistent, * * * the [trial] court may properly decide that such testimony should be given no weight." Conrad at 111. Here, as demonstrated above, Kelly, Pugh, and Alanis unequivocally testified to observing the Rule 59 violations. Thus, the witnesses did not provide internally inconsistent *Page 38 
testimony, and the evidence did not evoke the Conrad admonition that the trial court give no weight to internally inconsistent evidence.
 {¶ 110} Likewise, "an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent[.]"Ohio Historical Soc. v. State Emp. Relations Bd. (1993),66 Ohio St.3d 466, 471. Here, the commission's inconsistent decisions on the ultimate issues before it demonstrate not that the commission made internally inconsistent findings from the evidence, but that the commission came to different ultimate results on the existence (or non-existence) of violations after applying the evidence to Rule 59.
 {¶ 111} In the final analysis, we reiterate the trial court's explicit duties under R.C. 119.12 that it "may affirm the order of the agency" if the trial court finds "that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." Here, we conclude that the trial court did not abuse its discretion in upholding the above Rule 59 violations because, as established above, the Rule 59 violations were supported by "reliable, probative, and substantial evidence" and were "in accordance with law."
 {¶ 112} Lastly, appellant claims that, if we reverse any of the above-noted violations, we are authorized to "modify the orders so they are in accordance with law." We note that R.C. 119.12 states that the trial court's judgment on an administrative appeal "shall be final and conclusive unless reversed, vacated, or modified on appeal."
 {¶ 113} Based on this court's precedent, we concluded above that the trial court abused its discretion in upholding violations in case Nos. 685-05 and 686-05. Thus, we *Page 39 
must reverse the trial court's judgment in regards to it upholding violations in case Nos. 685-05 and 686-05.
 {¶ 114} However, we next determine whether we must also modify the sanctions imposed against appellant. In case No. 685-05, the commission issued the following sanction:
 * * * [T]he Permit Holder has the option to either pay a forfeiture in the amount of $73,000.00, or serve the suspension order below. If the Permit Holder shall elect to pay the forfeiture, the Permit Holder has twenty-one (21) days after the date on which this order is sent to pay the full amount of the forfeiture. * * *
 * * * If you elect not to pay the aforementioned forfeiture, the Commission hereby orders that you serve a 365 day suspension * * *
The commission imposed the above sanction concurrent with case Nos. 686-05, 689-05, 690-05, 692-05, 693-05, 694-05, 696-05, 698-05, 701-05, and 702-05.
 {¶ 115} In case No. 686-05, the commission issued the following sanction:
 * * * [T]he Permit Holder has the option to either pay a forfeiture in the amount of $0.00, or serve the suspension order below. If the Permit Holder shall elect to pay the forfeiture, the Permit Holder has twenty-one (21) days after the date on which this order is sent to pay the full amount of the forfeiture. * * *
 * * * If you elect not to pay the aforementioned forfeiture, the Commission hereby orders that you serve a 365 day suspension * * *
The commission imposed the above sanction concurrent with case Nos. 685-05, 689-05, 690-05, 692-05, 693-05, 694-05, 696-05, 698-05, 701-05, and 702-05.
 {¶ 116} As to the other cases for which the commission found violations, the commission issued the following sanctions: *Page 40 
 * * * [T]he Permit Holder has the option to either pay a forfeiture in the amount of $0.00, or serve the suspension order below. If the Permit Holder shall elect to pay the forfeiture, the Permit Holder has twenty-one (21) days after the date on which this order is sent to pay the full amount of the forfeiture. * * *
 * * * If you elect not to pay the aforementioned forfeiture, the Commission hereby orders that you serve a 365 day suspension * * *
The commission reiterated that the sanctions were to be served concurrently with the other case numbers.
 {¶ 117} Under the specific circumstances noted above, we conclude that we have no cause to modify the sanctions imposed against appellant, given that the commission imposed such concurrent sanctions, which effectively intertwined the sanctions with the above violations and effectively had appellant serve one sanction for all of the above-noted violations. Given such circumstances, any modification to the sanctions would effectively disturb the sanctions imposed on the other violations for which the trial court did not abuse its discretion in upholding. As a result, any such modification would be in contravention of mandates that reviewing courts not disturb a penalty that the commission was otherwise authorized to impose. See Aida Ent., Inc. v. Ohio LiquorControl Comm., Franklin App. No. 01AP-1178, 2002-Ohio-2764, at ¶ 13 (holding that a reviewing court may only modify an order after finding that the order cannot stand); see, also, Henry's Café, Inc. v. Bd. ofLiquor Control (1959), 170 Ohio St. 233, paragraph three of the syllabus (holding that a reviewing court "has no authority to modify a penalty that [an administrative] agency was authorized to and did impose"); see, also, McCartney Food Mkt., Inc. v. Ohio Liquor Control Comm. (June 22, 1995), Franklin App. No. 94APE10-1576 (stating that "once there is a proper determination of a violation of *Page 41 
law by the commission, it has within its discretion the authority to impose various penalties"). Thus, we reiterate that our determination to reverse the trial court's decision to uphold violations in case Nos. 685-05 and 686-05 has no bearing on the concurrent sanctions issued by the commission.
 {¶ 118} Accordingly, based on the above, we sustain in part and overrule in part appellant's single assignment of error. As such, we affirm in part the judgment of the Franklin County Court of Common Pleas, reverse in part the judgment in regards to it upholding the violations in case Nos. 685-05 and 686-05, and we remand this cause to the trial court for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 BROWN and McGRATH, JJ., concur. *Page 1